**BOWEN ENGINEERING CORPORATION, Appellant (Intervening Defendant),**

and

**Board of Commissioners of Tippecanoe County, Indiana, Appellant (Defendant),**

v.

**W.P.M. INC., a Michigan Corporation, Patrick Anthony Leoni and Jim Lee Terry, Appellees (Plaintiffs).**

No. 79A02–8911–CV–597.

Court of Appeals of Indiana, Second District.

Aug. 14, 1990.

Thomas A. Withrow, B. Keith Shake, Henderson, Daily, Withrow & Devoe, Indianapolis, for appellant Bowen Engineering Corp.

Lawrence B. O'Connell, Gothard & O'Connell, Lafayette, David C. Campbell, Tammy J. Meyer, Bingham Summers Welsh & Spilman, Indianapolis, for appellant, Board of Com'rs of Tippecanoe County, Indiana.

Peter G. Tamulonis, Kightlinger & Gray, Indianapolis, for amicus curiae Indiana Constructors, Inc.

Diane S. Shea, Ass'n of Indiana Counties, Indianapolis, for amicus curiae Ass'n of Indiana Counties.

Eric J. Flessland, Butzel Long Gust Klein & Van Zile, Birmingham, Mich., Lou Pearlman, Pearlman & Chosnek, Lafayette, for appellees.

BUCHANAN, Judge.

## CASE SUMMARY

Defendant-appellant Board of Commissioners of Tippecanoe County (Board) and intervenor-defendant-appellant Bowen Engineering Corp. (Bowen) appeal from the trial court's judgment which enjoined the Board from contracting with Bowen for a reconstruction project and from rejecting the bid from plaintiff-appellee W.P.M. Inc. (WPM), claiming the trial court improperly consolidated the hearing on the preliminary injunction with the trial on the merits and that the trial court abused its discretion by substituting its judgment for the Board's when ordering it to consider WPM's bid.

We affirm.

## FACTS

The facts most favorable to the trial court's judgment reveal that in July and August 1988, the Board solicited bids for the Parker Ditch Reconstruction project (project) which was to provide drainage for the new Subaru/Isuzu facility located near Lafayette. The Board received five bids:

| | |
|---|---|
| WPM: | $2,454,820.56 |
| Bowen: | $2,483,525.00 |
| T.G. Excavating: | $2,541,108.07 |
| Fauber Construction: | $2,730,000.00 |
| E.H. Hughes: | $2,925,952.00 |

On September 19, 1988, the Board rejected WPM's bid because the bid and bond were addressed to the Indiana Employment Development Commission, and not to the Board. It awarded the contract to Bowen. On September 20, 1988, WPM brought suit against the Board and the court allowed WPM to amend its bid to correct its error. The court also ordered the Board to award the contract to WPM. Bowen filed an original action in the Indiana Supreme Court, which issued a writ of mandamus and ordered the trial court to delete that portion of its order which directed the Board to award the contract to WPM (because the court itself could not act for the Board).

After remand, the Board decided to reject all of the bids and resolicit a second round of bids for the project. WPM brought suit again, and the court decided that once the Board had accepted one of the bids, it did not have the authority to reject all of the bids and resolicit new bids. The court ordered the Board to consider only the original round of bids. No appeal from this decision was taken.

On remand, the Board again rejected WPM's bid, awarded the contract to Bowen, and issued the following pertinent findings on July 20, 1989:

"2. That the bidders' proposed plan or plans for performing the public work and the equipment that they have available for the performance of the public work in the form solicited on Form No. 96 prescribed by the State Board of Accounts is a material factor in the Board's determination of which contractor has duly considered the required performance, has planned for completion of the Project in a thorough and expeditious manner, and has sufficient resources available to complete the Project, without attempting to overly burden the bidding process in an anti-competitive manner.

3. The Board rejects the W.P.M., Inc. bid for failing to provide its proposed plan or plans for performing the public work and the equipment that it has available for the performance of the public work as required by I.C. 36–1–12–4(b)(6) and Form No. 96, Bid for Public Works, Part II, Section II, Questions 1 through 4.

. . . . .

6. In the event it is later determined upon judicial review that the Board is not properly permitted to make the determination noticed in #3 above, the Board having reviewed the comparative experiences, reputation, abilities, capacity, and other subjective factors relative to the "responsibleness" of W.P.M., Inc. and Bowen Engineering Corporation, finds these subjective factors to materially favor Bowen Engineering Corporation, and, therefore, assuming for the sake of argument the determination #3 above was not material, not withstanding [sic] the fact that Bowen's bid exceeds W.P.M.'s bid by approximately 1%, the Board deems it in the best interest of the County to award the Project to Bowen."

*Record* at 836.

On August 29, 1989, WPM, along with Patrick Leoni and Jim Terry, initiated the present action in the Tippecanoe Circuit Court against the Board, seeking to enjoin the Board from awarding the contract for the project to Bowen. On September 1, 1989, Bowen moved to intervene. The Board moved for a change of venue from the judge and on September 15, 1989, a special judge appeared, qualified, and assumed jurisdiction of the case. The trial court set a hearing date for all pending motions. The hearing was held on October 19, 1989, and the trial court allowed Bowen to intervene. Also at this hearing, the answers of WPM to Sec. 2 of Form 96 (the plan) were introduced into evidence. On October 20, 1989, the trial court issued the following judgment:

"ORDER

On October 19, 1989, a hearing was held in this cause on all pending motions, Bowen Engineering Corporation was allowed to intervene as a defendant and counsel for plaintiffs and defendants were allowed to argue, both extensively and vigorously, and to present evidence on anything they thought relevant. Affidavits and exhibits were presented as well as testimony.

Plaintiffs seek equitable relief under Trial Rule 65 which provides in (A)(2) that the court may order the hearing on the merits be consolidated with the hearing for preliminary injunction. That was done on September 15, 1989.

The scenario in this cause as brought out by the affidavits, exhibits, and testimony and clarified by the statements of counsel is as follows:

Plaintiff W.P.M., Inc., (W.P.M.) and defendant Bowen Engineering Corporation (Bowen) with others submitted bids to the defendant Board of Commissioners of the County of Tippecanoe (Board) for the Parker Ditch Reconstruction project.

The Board said 'No' to W.P.M. because W.P.M. used the wrong name on Form 96 submitted with the bid. Bowen, whose bid was higher than W.P.M., was chosen by the Board for the project.

The Tippecanoe Circuit Court said that W.P.M. could correct the name

and that the Board should choose W.P.M.

The Supreme Court of Indiana said that the Tippecanoe Circuit Court could not make the choice for the Board.

The Board said that they would reopen bidding by rejecting all bids submitted.

The Fountain Circuit Court said the Board could not reject all bids and would have to choose one of the bids already submitted.

Roger F. Detzner, who was requested by the Board to evaluate bids when originally submitted, said that W.P.M. did not submit Section II of Form 96 but that was 'unimportant.'

W.P.M. said that it did submit Section II of Form 96.

The Board said that the failure of W.P.M. to submit Section II of Form 96 with its bid was not responsive and again said 'No' to W.P.M. and again chose Bowen. Besides, the Board said, all in all Bowen is better and it would be in the best interest of the county to go with Bowen.

The Indiana Legislature said that this was the type of behavior that they wanted to avoid.

The Board seems to be going to great lengths and expense to avoid giving the contract to the lowest responsive and responsible bidder as contemplated by the Indiana Legislature.

The Board contends that W.P.M. should post a bond to cover the expense the actions of W.P.M. could occasion.

The expense occasioned by the actions of the Board thus far in this action should be of concern, however, any increased expense caused by the Board should not be assessed against W.P.M.

IS THEREFORE ORDERED that the Board of Commissioners of the County of Tippecanoe is enjoined from entering a contract with Bowen Engineering Corporation for the Parker Ditch Reconstruction Project and from rejecting the bid of W.P.M. Inc., for the reasons set forth in its findings of July 20, 1989.

IT IS FURTHER ORDERED that the Board of Commissioners of the County of Tippecanoe is mandated to award the Parker Ditch Reconstruction project to the lowest responsive and responsible bidder on the basis of the bids submitted for August 22, 1988, *including the answers of W.P.M. Inc., to Section II of Form 96.*

IT IS FURTHER ORDERED that no bond shall be required."

*Record* at 548–50 (emphasis supplied).

## ISSUES

Bowen and the Board raise several issues for our consideration, which we consolidate and restate as follows:

1. Whether the trial court erred when it consolidated the hearing on the preliminary injunction with the hearing on the merits?

2. Whether the trial court improperly substituted its judgment for that of the Board?

## DECISION

ISSUE ONE—Did the trial court err when it consolidated the hearing on the preliminary injunction?

PARTIES' CONTENTIONS—Bowen claims the trial court erred when it consolidated the hearing on the preliminary injunction with the hearing on the merits because the trial court gave no notice of its intention to consolidated the hearings. WPM responds that Bowen has demonstrated no prejudice arising from the lack of notice and is therefore not entitled to relief.

CONCLUSION—The trial court did not commit reversible error.

Indiana Rules of Procedure, Trial Rule 65(A)(2) covers this situation: "Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application."

■ Bowen laments that the trial court failed to give notice to the parties that the October 19 hearing would be such a consolidated hearing. The trial court's judgment indicates that it ordered the consolidation on September 15, 1989, *record* at 548, but this order merely set a date for a "hearing on all pending motions." *Record* at 132. So we must agree with Bowen that this was not sufficient notice that the October 19th hearing would be a consolidated hearing on the merits.

In examining the issue of notice with respect to consolidation pursuant to T.R. 65(A)(2), this court in *Leinenbach v. Dairymen, Inc.* (1975), 166 Ind.App. 80, 333 N.E.2d 910, said: "Because of the dearth of Indiana cases covering the central theme of the issues raised in this appeal we deem it appropriate to consider federal cases decided under the identical federal rule." *Id.* at 82, 333 N.E.2d at 912; and then went on to conclude that consolidation was not proper unless the parties received sufficient notice to allow them to prepare their cases and that reversible error occurs when no notice is given and the effect is to deprive a party of the right to present his case on the merits.

Federal courts have gone even further. The court in *Eli Lilly & Co. v. Generix Drug Sales, Inc.* (5th Cir.1972), 460 F.2d 1096, which was cited with approval by this court in *Leinenbach*, recognized that "surprise alone is not a sufficient basis for appellate reversal; appellant must also show that the procedures followed resulted in prejudice...." *Eli Lilly, supra* at 1106. The established federal rule is that consolidation without notice is not reversible error absent a showing of prejudice. *See also Holly Sugar Corp. v. Goshen County Co-Op Beet Growers Ass'n* (10th Cir.1984), 725 F.2d 564; *Socialist Workers Party v. Ill. State Bd. of Elections* (7th Cir.1977), 566 F.2d 586; *Atlantic Richfield Co. v. F.T.C.* (5th Cir.1977), 546 F.2d 646; *Eli Lilly, supra.*

■ While we agree with Bowen that the trial court erred by failing to give notice to the parties that the October 19th hearing would be a consolidated hearing, *see Leinenbach, supra,* we must conclude Bowen has failed to demonstrate reversible error because no showing has been made of any prejudice which arose from the consolidation. *See Holly Sugar, supra; Socialist Workers, supra; Atlantic Richfield, supra; Eli Lilly, supra.*

Bowen has made no argument that it was unable to fully present its case to the trial court before the trial court's judgment. Bowen cites no evidence it failed to introduce and asserts no new argument it would have made had it been on notice of the consolidation. The sole allegation of prejudice Bowen makes is that it was unable to seek a change of venue pursuant to Indiana Rules of Procedure, Trial Rule 76, because the trial court entered judgment the day after the hearing. *Appellant Bowen's Brief* at 41.

■ We conclude that Bowen, as an intervenor-defendant, did not have a right to a change of venue under T.R. 76. The Board, Bowen's co-party, had already moved for and received a change of venue from the judge. *Record* at 112. Therefore, Bowen was not entitled to another change of venue. *See State ex rel. Radbel v. Jasper Superior Court* (1984), Ind., 467 N.E.2d 693; *State ex rel. First State Bank of Whiting v. Porter Superior Court* (1983), Ind., 447 N.E.2d 568.

Further, it has long been established that an intervenor must accept the case as he finds it at the time of his intervention and is bound by the rulings made prior to the time he is made a party. *Woerner v. City of Indianapolis* (1961), 242 Ind. 253, 177 N.E.2d 34, *cert. denied* 368 U.S. 989, 82 S.Ct. 605, 7 L.Ed.2d 526; *Dept. of Ins. v. Motor Ins. Corp.* (1956), 236 Ind. 1, 138 N.E.2d 157; *Homebuilder's v. Utility Reg. Comm'n* (1989), Ind.App., 544 N.E.2d 181; *Sexton v. Johnson Suburban Utilities, Inc.* (1981), Ind.App., 422 N.E.2d 1293, *trans. denied.*

Even if the Board had not already been granted a change of venue, Bowen would not have been entitled to a change of venue. Bowen accepted the jurisdiction of the trial court when it intervened and it must accept the case as it found it. *Woerner,*

*supra; Dept. of Ins. v. Motors Ins. Corp.* (1956), 236 Ind. 1, 138 N.E.2d 157; *Sexton, supra.*

Because Bowen was not entitled to a change of venue, its only claim of prejudice from the trial court's consolidation is without merit. Bowen was not prejudiced by the consolidation without notice; no reversible error.

ISSUE TWO—Did the trial court substitute its judgment for the Board's?

PARTIES' CONTENTIONS—The Board and Bowen assert that the Board's decision was within its discretion and that the Board properly rejected WPM's bid because it was unresponsive and not responsible. WPM replies that the Board acted arbitrarily and capriciously when it determined that its bid was unresponsive and not responsible, and that the trial court correctly concluded its bid was responsive and responsible. The Association of Indiana Counties and the Indiana Constructors, Inc., a not-for-profit Indiana corporation whose members are engaged in the construction industry throughout the state, appear as amicus curiae supporting the Board's determination.

CONCLUSION—The trial court did not err.

█ It is true judicial review of the decisions of a public agency is limited. *Lilley v. City of Carmel* (1988), Ind.App., 527 N.E.2d 224. When the awarding body has been vested with wide discretion, a reviewing court must not substitute its judgment for that of the awarding body, but will reverse only when the challenged determination is clearly arbitrary, illegal, corrupt or fraudulent. We, like a trial court, dare not trespass. *Budd v. Bd. of County Comm'ns* (1939), 216 Ind. 35, 22 N.E.2d 973; *Appeal of Associated Sign & Post* (1985), Ind.App., 485 N.E.2d 917.

The governing statute, Ind.Code 36–1–12–4(b)(8)(A) (1988), provides the Board shall award the public works contract "to the lowest responsible and responsive bidder." It gives the Board wide discretion. *See Associated, supra.*

The Board determined that WPM's bid was not responsive because it failed to include a section of Form 96, which included the bidder's proposed plan for performing the public work and the equipment that the bidder had available for the performance. In the alternative, the Board also concluded that if it was not allowed to reject WPM's bid on that basis, the Board also considered the factor of "responsibleness" as favoring Bowen and that awarding the contract to Bowen was in the county's best interest. *Record* at 836.

We will review the Board's determination of responsiveness and responsibleness separately.

## I. RESPONSIVENESS

█ While IC 36–1–12–4 requires the Board to award the public works contract to the lowest responsible and responsive bidder, the statute does not define "responsive." However, while not controlling, the legislature has provided a definition of "responsive contractor" in the context of *state* public works contracts. Ind.Code 4–13.6–1–16 (1988) provides:

> " 'Responsive contractor' means a contractor that has submitted a bid or a quotation in conformity with instructions, contract documents, terms, and other conditions for a contract."

This court, in *Associated,* also considered the factors affecting a determination of responsiveness. We decided that bids submitted for public contracts must substantially conform to the specifications contained in the invitation to bid, and that while minor variances would not render a bid invalid, a material variance which affords one bidder a substantial advantage not available to other bidders destroys the competitive character of the bidding process and must be rejected by the awarding body as unresponsive. *Associated, supra* at 925.

The *Associated* court concluded the bidder's bid was unresponsive because the invitation to bid "clearly required the submission of a detailed affirmative action plan prior to the deadline for accepting bids. Associated, nonetheless, made only an inept attempt to comply with that require-

ment submitting a clearly unacceptable proposal." *Id.* at 925.

Paramount to a determination of responsiveness, then, is an examination of the invitation to bid. Logically, since a bid is merely a reply to the invitation, it must only meet the requirements of the invitation to be considered "responsive."

A reading of the Board's invitation demonstrates that bidders were not required to submit a proposed plan for performing the work and a list of equipment available for the performance. *Record* at 107–110. While the addendum to the bid specification provided that Form 96 was included with the invitation, it did not require the submission of Form 96 for consideration.[1]

Further, the Board was aware the invitation did not require the submission of section II of Form 96. A letter from the Board's agent to the Board evaluated each of the bids received for the project. The letter indicated WPM's bid was lacking section II of Form 96, but observed: "No specific bid form was requested in the bid package and thus the absence of this section must be deemed unimportant to the bid." *Record* at 957.

Therefore, it would seem that because the invitation did not request the bidders to submit Form 96, the Board could not consider WPM's bid unresponsive for failing to include section II of Form 96 in its bid. If the Board desired such information in order to fully evaluate the bids, the Board should have requested a completed Form 96 from WPM before making its decision.

■ The Board claims, however, that the information in section II of Form 96 is required by statute, therefore WPM's bid was defective as a matter of law. IC 36–1–12–4 provides, in pertinent part:

"(b) The *board* must comply with the following procedure:

.    .    .    .    .

(6) If the cost of a project is one hundred thousand dollars ($100,000) or more, the *board shall* require the bidder to submit a financial statement, a statement of experience, his proposed *plan or plans* for performing the public work, and the equipment that he has available for the performance of the public work. The statement shall be submitted on forms prescribed by the state board of accounts." (Emphasis supplied).

The Board seeks to profit from its own mistake. This statute clearly makes it the *Board's duty* to see that such information (the plan—Sec. II of the Board's form) is submitted. As the *Board's* invitation did not require the information, it was the *Board's invitation* that was defective as a matter of law, not WPM's bid. The bidder is not directed to submit the information by the statute, but rather the *Board* is directed to request such information in its invitation.[2]

Because of the Board's defective procedure, the trial court properly allowed WPM to file Sec. II of Form 96 (the plan) and mandated the Board to proceed to award the contract in accordance with its order of October 20, 1989.

The record contains evidence that the Board was aware of this defect in its invitation when it resolicited bids after WPM's first suit against the Board was successful. The Board's second advertisement for bids specifically provided that all bids must be submitted on Form 96. *Record* at 241.

Thus, we conclude that, as a matter of law, WPM's bid was not unresponsive and that the trial court correctly decided that the Board could not reject WPM's bid as not responsive.

## II. RESPONSIBLENESS

Anticipating an invalidation of its rejection of WPM's bid as unresponsive, the Board made an alternate finding, determin-

---

1. There was evidence in the record that the addendum did not include Form 96, as it recited. *Record* at 64.

2. This is in direct contrast with the provisions of Ind.Code 5–16–1–2 (1988) which provides that in *state* public works projects, it is the *bidder's* responsibility to submit the information in the bid.

ing that, upon reviewing the factors relative to "responsibleness", the subjective factors favored Bowen and that it would be in the county's best interest to award the project to Bowen. *Record* at 836. The trial court reasoned that this was precisely the type of determination the legislature sought to avoid when it enacted the competitive bidding laws.

Again, in the context of *state* public works contracts, the legislature defined "responsible contractor" as:

" 'Responsible contractor' means a contractor that:

(1) is capable of performing a public works contract fully;

(2) has the integrity and reliability that will ensure good faith performance; and

(3) is qualified under IC 4–13.6–4, if applicable."

IC 4–13.6–1–15.

■ In the determination of whether a bidder is "responsible," the awarding body may properly consider a variety of factors, such as: ability and capacity, capital, character and reputation, competency and efficiency, energy, experience, facilities, faithfulness, fraud or unfairness in previous dealings, honesty, judgment, promptness, quality of previous work, and suitability to the particular task. *Budd, supra; Inman's, Inc. v. City of Greenfield* (1980), Ind.App., 412 N.E.2d 126. If the factors support the awarding agency's decision, the courts will not impose their judgment upon the awarding agency. *Budd, supra; Inman's, supra.*

■ There is, however, a significant distinction between the competitive bidding statutes the courts in *Budd* and *Inman's* considered and the statute under which the Board awarded the project's contract to Bowen. In *Budd,* the awarding body was given the discretion to "award a contract to the lowest and *best* responsible bidder...." § 26–536, Burn's 1933, Sec. 5401, Baldwin's 1934 (emphasis supplied). In *Inman's,* the administrative agency was allowed to award contracts to the "lowest and *best* bidder." Ind.Code 5–17–1–2 (1988) (emphasis supplied).

In sharp contrast, however, IC 36–1–12–4(b)(8)(A) provides the Board may award a contract only to "the lowest responsible and responsive bidder." The Board has *not* been given the discretion to award a contract to the *most* responsible bidder, rather, the statute merely provides that the Board must require the winning bidder to be responsible.

The definition of "responsible contractor" found in IC 4–13.6–1–15 suggests the determination of "responsibleness" is to be made *independently* for each bidder. The Board may not make comparisons of bidders to determine responsibleness. Responsibleness is a minimal requirement of bidders, not a competitive standard among bidders. A bidder can be unresponsible only if the awarding body would not award the contract to the bidder *even if* that bidder had submitted the sole bid.

The absence of the term "best" or "most responsible" unmistakably demonstrates the legislature did not intend "responsibleness" to become a competitive factor between bidders, but rather, the legislature intended to give the Board the discretion to reject bids from contractors who are unable to perform the work satisfactorily if awarded a contract. The Board may not award the contract to Bowen simply because the "subjective factors ... materially favor Bowen." *Record* at 836. Whether Bowen is "more responsible" than WPM is irrelevant when determining whether WPM is the lowest responsible and responsive bidder.

Both the Association of Counties and the Indiana Constructors, Inc. argue that the Board was acting within its discretion when it chose to award the contract to Bowen, and claim the trial court improperly substituted its judgment for that of the Board. While we acknowledge the broad discretion given to the Board under IC 36–1–12–4, that discretion is not unfettered. The Board is bound by statute and must act in accordance with its provisions.

By our interpretation of the governing statute, the trial court acted within its authority as a reviewing court to prevent the Board from acting illegally. The trial

court did not substitute its judgment for that of an administrative agency, or differently stated, it gave due deference to the sacred cow of limited judicial review.

Judgment affirmed.

SHIELDS, P.J., and RATLIFF, C.J., concur.